UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

PATRICIA BLACKBURN,

    Plaintiff,

  v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

Case No. 1:09-cv-943

Barrett, J.
Bowman, M.J.

**REPORT AND RECOMMENDATION**

Plaintiff Patricia Blackburn filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents three closely related claims of error, all of which the Defendant disputes. For the reasons explained below, I conclude that this case should be REMANDED because the finding of non-disability is not supported by substantial evidence in the administrative record.

    **I. Summary of Administrative Record**

Plaintiff filed an application for Supplemental Security Income (SSI) in October 2006 and an application for Disability Insurance Benefits (DIB) in June 2006, alleging in both applications a disability onset date in October 2005, due to "heart problems" that resulted in difficulties in lifting and breathing. (Tr. 373-378 (SSI) and Tr. 47-48, 62 (DIB)). She was 51 years old at the time of her alleged disability. (*Id.*). After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge (ALJ). (*Id.* ). On January 13, 2009, an evidentiary

1

hearing was held in Cincinnati, Ohio, at which Plaintiff was represented by counsel. (*Id.* at 402-435). At the hearing, ALJ Sarah Miller heard testimony from Plaintiff and from William Cody, a vocational expert.

On February 18, 2009, the ALJ entered her decision denying Plaintiff's DIB and SSI applications. (Tr. 13-20). The Appeals Council denied Plaintiff's request for review. (Id. at 6). Therefore, the ALJ's decision stands as the Defendant's final determination.

The ALJ's "Findings," which represent the rationale of the decision, were as follows:

1. The claimant met the insured status requirements of the Social Security Act through December 31, 2008.

2. The claimant has not engaged in substantial gainful activity since October 1, 2005, the alleged onset date (20 CFR 416.971 *et seq.,* and 416.971 *et seq.*).

3. The claimant has the following severe impairments: the combined effect of coronary artery disease status post bypass surgery, hypertension, chronic obstructive pulmonary disease, sleep apnea, and degenerative changes of the lower back and knees.
   ……………………..

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.1525, 404.1526, 416.925 and 416.926).
   ………………………

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.1567(b) and 416.967(b) except that she must be given the opportunity to alternate between sitting or standing every two hours for a moment or two and should be required to work only in a clean air environment.
   ………………………..

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).
   ...............................

7. The claimant was born on May 7, 1954 and was 51 years old, which is defined as an individual closely approaching advanced age, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569a, 416.969 and 416.969a).
..............................

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 1, 2005 through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 14-20).

There is no dispute that Plaintiff has a history of heart problems dating to August 2004 when she was diagnose with an acute myocardial infarction and underwent a coronary artery bypass. (Tr. 108, 109, 112). Plaintiff's medical records also reflect a history of chronic back and hip pain, and diagnoses of fibromyalgia, chronic obstructive pulmonary disease (COPD) and carpal tunnel syndrome.

On appeal to this court, Plaintiff maintains that the ALJ erred by: 1) failing to address Plaintiff's degenerative disc disease and fibromyalgia; 2) failing to consider the combined effects of Plaintiff's impairments when determining her residual functional capacity ("RFC"); and 3) substituting her own non-medical judgment in place of contrary medical evidence. All three arguments will be addressed together, insofar as they represent variations on the same theme.

3

**II. Analysis**

**A. Judicial Standard of Review**

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §§423(a), (d), 1382c(a). The definition of the term "disability" is essentially the same for both DIB and SSI. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

4

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A). In this case, Plaintiff alleges that both an initial error at the second step and errors at the fifth step of the sequential analysis require this Court to reverse the Commissioner's decision.

  **B. The ALJ's Assessment of Plaintiff's Functional Capacity, as it relates to Plaintiff's Degenerative Disc Disease, Fibromyalgia, and Carpal Tunnel Syndrome.**

  **1.  Alleged Error at Step 2**

Plaintiff complains in her first assignment of error that the ALJ erred at Step 2 of the sequential analysis by failing to consider Plaintiff's fibromyalgia and Plaintiff's degenerative disc disease as "severe" impairments.  Plaintiff argues that the error constitutes reversible error because Plaintiff has functional limitations from both impairments which should have been included in the residual functional capacity ("RFC") that the ALJ described to the vocational expert ("VE").

As referenced above in this court's summary of the ALJ's findings, the ALJ's opinion contained no discussion whatsoever of the diagnosis of fibromyalgia or of Plaintiff's diagnosis of "degenerative disc disease."  Defendant argues that the ALJ's failure to discuss these two diagnoses as impairments at Step 2 of the sequential analysis was harmless error, because the ALJ determined that Plaintiff had other severe impairments and therefore proceeded to the next step of the sequential analysis in Plaintiff's favor.  *See, e.g., Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)(finding it "unnecessary" to determine whether ALJ committed error in failing to find a particular severe impairment, when ALJ continued with sequential analysis after finding different impairments, and properly considered contested impairment in determining RFC).

It is true that a diagnosis, in and of itself, is not conclusive evidence of disability because it does not reflect the limitations, if any, that it may impose upon an individual. *See Young v. Secretary of Health and Human Services*, 925 F.2d 146, 151 (6th Cir.

6

1990); *Wallace v. Astrue*, 2009 WL 6093338 at *8 (6th Cir. December 1, 2009).  This general principle may be particularly important when considering the diagnosis of fibromyalgia, since most people are not totally disabled from that condition. *See Vance v. Comm'r of Social Security*, 260 Fed. Appx. 801, 806, 2008 WL 162942 at *4 (6th Cir. Jan. 15, 2008).  Thus, only a diagnosis that constitutes or results in a severe impairment is relevant at Step 2.  Although an error at Step 2 will not always require reversal, such an error may require remand if the diagnosis and other evidence in the record support a finding of functional limitations that the ALJ failed to consider or include in a later step of the sequential analysis, when considering a claimant's RFC.

In this case, the ALJ determined that Plaintiff retained the functional capacity to perform light work.  Plaintiff claims that had the ALJ determined greater limitations that restricted Plaintiff to sedentary work, Plaintiff's age in this case would have mandated a presumptive finding of disability.  *See* 20 CFR §201.12.  Even if Plaintiff were not limited to sedentary work but greater limitations had been found, there is a significant chance that Plaintiff would have been found to have been disabled given the testimony by the vocational expert that Plaintiff would be restricted from most light work positions due to her need for additional non-exertional limitations.

Both parties acknowledge that the key issue in this case is whether the ALJ adequately accounted for any functional limitations that may relate to the diagnoses of fibromyalgia and degenerative disc disease, regardless of whether those diagnoses should be labeled in and of themselves as "severe" impairments as Plaintiff asserts in her first assignment of error.  In fact, Plaintiff's remaining assignments of error are variations on the same theme.  In her second assignment of error, Plaintiff contends that the ALJ erred by determining Plaintiff's RFC without adequately considering the

7

combined effects of Plaintiff's degenerative disc disease, fibromyalgia, and a third diagnosis - carpal tunnel syndrome - that the ALJ discussed but rejected as imposing any significant limitations. In her third assignment of error, Plaintiff charges that ALJ Miller inappropriately minimized medical evidence of Plaintiff's limitations from her carpal tunnel syndrome, thereby substituting her own non-medical judgment in place of the evidence.

Defendant argues that the ALJ adequately considered all of Plaintiff's diagnoses and medical records in determining Plaintiff's functional impairments. If the substantial evidence in the record supports no additional functional limitations than those determined by the ALJ, then the Sixth Circuit's decision in *Maziarz* supports the Defendant's position that the ALJ's failure to specifically discuss Plaintiff's diagnoses of fibromyalgia and degenerative disc disease is of no moment. Similarly, so long as the record as a whole supports the ALJ's determination of Plaintiff's RFC and does not support greater functional limitations based on her carpal tunnel syndrome and/or her combined impairments, then this Court must affirm the Secretary's decision. *See, e.g., Young v. Secretary of Health and Human Serv.*, 925 F.2d 146, 148-149 (6th Cir. 1990); *Varley v. Secretary of Health and Human Serv.,* 820 F.2d 777, 779 (6th Cir. 1989).

### 2. Plaintiff's Residual Functional Capacity

#### a. RFC Determined by the ALJ

The ALJ determined Plaintiff's residual functional capacity (RFC) in part after listening to Plaintiff describe her daily activities and evaluating her credibility. The ALJ found, and Plaintiff does not dispute, that Plaintiff's daily activities include cooking, washing dishes, and doing other housework including laundry, making the bed, and dusting. (Tr. 15-16). Plaintiff testified that she takes breaks while doing housework and

8

cannot sit for long periods of time.  (*Id.*).  She goes grocery shopping and drives to doctor's appointments.  She reads and watches television, and does jigsaw puzzles although doing them causes her hands to hurt.  She goes to church at least once per week, sometimes twice, sees family and friends, and sometimes goes out to dinner.  (*Id.*).

In addition to Plaintiff's testimony concerning her daily activities, the ALJ relied upon medical records submitted by the Plaintiff, a consultative physical evaluation performed by Dr. Jennifer Bailey in April 2006, and the report of a non-examining consulting physician, in order to assess Plaintiff's RFC.  In describing Plaintiff's level of impairment to the vocational expert, ALJ Miller referenced Plaintiff's extensive medical records, beginning with Plaintiff's August 2004 acute myocardial infarction, hypertension, obesity, tobacco use, asthma, COPD, hyperlipidema, physical therapy relating to her back and hip pain, fibromyalgia, migraines, gastric reflux and allergies, as well as obstructive sleep apnea controlled with a CPAP machine.  (Tr. 427-428).  The ALJ also described EMG results showing "bilateral medium neuropathy at the wrist, mild to moderate right carpal tunnel syndrome, [and] mild left carpal tunnel syndrome."  (Tr. 429).  After Plaintiff's attorney reminded the ALJ that MRI data showed hip and spine impairments, the ALJ also included those impairments.  (*Id.*).

Upon completing his list of the medical evidence of various impairments that the VE should consider, ALJ Miller asked the VE to assume "that the claimant can sit for six hours, stand or walk for six hours, frequently lift or carry ten pounds, occasionally lift or carry twenty pounds" and further restricted Plaintiff to "a job where she can alternate between sitting or standing every two hours just for a moment or two."  (Tr. 429-430).  The ALJ also determined that Plaintiff should be restricted to climbing ramps or stairs

9

only "occasionally" and with no ability to "climb ladders, ropes or scaffolds," and with avoidance of exposure to "fumes, odors, dust, gasses," or "poor ventilation." (Tr.430).

Based upon all of these limitations, the VE opined that Plaintiff could still perform three light level unskilled jobs, including assembler, packer, and cleaner. (*Id.* at 430-431). In a second hypothetical the ALJ additionally restricted Plaintiff to using her hands "two-thirds of the day." Under that additional restriction, the VE somewhat more equivocally testified that the Plaintiff "probably" could perform the "packer and the printer job." (*Id.* at 431).

### b. Additional Limitations from Fibromyalgia

Plaintiff contends that the ALJ erred by failing to include any limitations relating to, or discussion of, Plaintiff's fibromyalgia. As noted above, the ALJ referenced Plaintiff's diagnosis of fibromyalgia in describing Plaintiff's medical impairments to the vocational expert. However, the ALJ did not find any specific limitations relating to that diagnosis, and did not refer to the diagnosis in her written opinion.

The diagnosis of Plaintiff's fibromyalgia is well-documented even though, as Defendant points out, the diagnosis was not made by Dr. Greenblatt until two years after Plaintiff had applied for SSI and more than a year after she applied for DIB. (Tr. 275, 289, 300, 306). Plaintiff argues that the ALJ erred by ignoring evidence of the limitations experienced by Plaintiff as a result of her fibromyalgia. Specifically, Plaintiff refers to evidence that she is limited in her ability to use her hands in gripping and opening things, dressing, shampooing, standing up from a straight chair, getting in and out of bed, climbing steps, bending down and picking up items, walking, and getting in and out of a car. (Tr. 278, 280, 282, 284, 286-287). All of these limitations were reported by Plaintiff on questionnaires that she completed for her treating

rheumatologist. The questionnaires, completed at office visits on different dates, asked the Plaintiff to describe her ability to perform the listed activities under one of four categories: "without any difficulty," "with some difficulty" "with much difficulty" or "unable to do." At an October 2007 office visit, Plaintiff rated her fibromyalgia pain as severe. (Tr. 279-280). Plaintiff testified similarly at the evidentiary hearing that she suffered from back and leg pain and had trouble with her hands. (Tr. 417, 424). Over the course of her treatment with Dr. Greenblatt, Plaintiff consistently chose the category "with some difficulty" for an increasing list of activities. In February 2008, Dr. Greenblatt increased Plaintiff's fibromyalgia medication (Tr. 275).

Despite these self-reports, Defendant argues that Dr. Greenblatt "never imposed any restrictions or indicated in any way that the condition caused any functional limitations," in stark contrast to the medical evidence presented in other fibromyalgia cases. *See, e.g., Preston v. Sec'y of Health & Human Servs.*, 854 F.2d 815 (6th Cir. 1988); *Rogers v. Comm'r of Social Security*, 486 F.3d 234, 244 (6th Cir. 2007). While it is true that Dr. Greenblatt did not articulate any specific functional limitations, it is also true that Dr. Greenblatt was never asked to complete any such evaluation. His office notes do not reflect an absent of limitations; rather, the records include Plaintiff's own reports that she suffers from functional limitations in the use of her hands as a result of her fibromyalgia, and that those limitations have increased over time. Plaintiff's records and testimony also reflect that her fibromyalgia causes pain. Although the ALJ evaluated Plaintiff's credibility in terms of her complaints of pain, it is unclear from the record whether ALJ Miller took into consideration Plaintiff's pain and/or any functional limitations that may be attributed to her fibromyalgia.

11

Given the utter absence of any discussion of Plaintiff's fibromyalgia by the ALJ in her written opinion, I conclude that remand is required. This is not a case in which the diagnosis of fibromyalgia is in dispute; Plaintiff regularly sees a rheumatologist for her condition. Defendant concedes Plaintiff suffers from fibromyalgia, but disputes the extent of limitations caused by that condition. However, in each of the cases relied upon by Defendant, the severity of the plaintiff's fibromyalgia was explicitly considered and discussed by the ALJ. *See, e.g.*, *Brazier v. Secretary of Health and Human Serv.*, 61 F.3d 903, 1995 WL 418079 (6th Cir. 1995)(table, upholding rejection of claim of disabling pain where ALJ found that neither diagnosis of fibromyalgia nor resulting pain were well supported in medical records).

This court simply cannot uphold Defendant's decision as supported by substantial evidence based on a silent record. *Accord, Stephens v. Astrue*, 2010 WL 1368891 (E.D. Ky. March 31, 2010)(remand required where record did not show that ALJ considered mental impairment that was not identified at second step of process at subsequent steps, before reaching non-disability determination). The limited medical records relied upon by the ALJ, such as the assessment of the consulting physician, are insufficient to support a finding of non-disability absent confirmation that the ALJ considered and properly evaluated *all* relevant evidence.

### c. Limitations from Degenerative Disc Disease

Unlike the diagnosis of fibromyalgia, the ALJ listed Plaintiff's "degenerative changes of the lower back" among Plaintiff's severe impairments in her written opinion. (Tr. 15). Thus, despite failing to use the formal diagnostic phrase, "degenerative disc disease," the ALJ at least made some reference to that diagnosis.

Plaintiff argues, however, that the ALJ should have included greater functional limitations, such as restricting Plaintiff from bending and stooping, as well as crawling, based upon records relating to her degenerative disc disease.  As previously discussed, although the ALJ did not reference restrictions on Plaintiff's ability to bend, stoop or crawl in her written decision, at the hearing when eliciting testimony from the VE upon which the written decision was based, ALJ Miller did include a reference to Plaintiff's back and hip conditions.  (Tr. 429).

Plaintiff advocates for the inclusion of greater restrictions based in part on a note from an examination dated July 2006 that referenced Plaintiff's "pain on both forward flexion and hyperextension, with more on forward flexion than hyperextension."  (Tr. 174).  However, in that same examination, the examining physician, Dr. Berger, found that Plaintiff "walks around the room without difficulty," and opined that, notwithstanding Plaintiff's complaints of some hip pain on rotation, he did "not think there was any significant limitation of movement of her hip."  (*Id.*).  Dr. Berger prescribed physical therapy and that Plaintiff "see the Ob/Gyn for evaluation of her [uterine] fibroid and whether or not they feel this might be contributing to her back pain."  (*Id.*).  Thus, reviewing Dr. Berger's note as a whole rather than parsing out the single reference to Plaintiff's experience of pain on flexion, it is not clear that Plaintiff suffers from any significant functional limitation.  Rather, the referenced record evidences that Plaintiff experienced some pain, and that Dr. Berger believed that a uterine fibroid might be at least partially the cause of that pain.

Plaintiff also points to physical therapy notes from an August 2006 evaluation that suggested some reduction of movement and pain in Plaintiff's right hip.  (Tr. 334).

13

However, follow-up physical therapy appointments reflect at least some improvement. (Tr. 335-336).

As further support for greater limitations as to stooping, bending or crawling, Plaintiff refers to two additional records. First, in a record from a sleep treatment center dated January 30, 2007, Plaintiff reported low back pain and leg pain in addition to her primary complaint of sleep disturbance. The clinician also noted that she "had difficulty getting up from a sitting position apparently due to pain." (Tr. 262-263). Obviously, however, difficulty on one occasion in getting up from a sitting position is not the same as a limitation on bending, stooping or crawling. Second, Plaintiff points to a form dated November 14, 2007 completed by Plaintiff's primary care physician that lists "low back pain" on a list of symptoms and states that Plaintiff has a decreased range of motion "of extension/flexion" at her waist of due to her back pain. (Tr. 204). However, that single record does not appear to contain objective clinical measurements of how much Plaintiff is limited in her range of motion.

20 C.F.R. § 404.1527(d)(2) provides: "[i]f we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) *is well-supported by medically acceptable clinical and laboratory diagnostic techniques* and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Id.* (emphasis added). Ultimately the determination of a claimant's residual functional capacity (RFC) is "reserved to the Commissioner." 20 C.F.R. §404.1527(e)(2).

In this case, it is fairly debatable whether substantial evidence supports the ALJ's implicit determination that Plaintiff suffers from no significant limitations at all in her ability to stoop, bend, or crawl based upon the ALJ's consideration of Plaintiff's

14

degenerative disc disease. Because remand is already required for further consideration of Plaintiff's fibromyalgia, and in view of the ambiguity as to whether the ALJ fully considered Plaintiff's degenerative disc disease at step four, the Defendant should also reconsider whether Plaintiff suffers from any functional impairment resulting from that diagnosis.

### c. Limitations from Carpal Tunnel Syndrome

The ALJ acknowledged that an EMG performed in December 2008 showed "moderate carpal tunnel syndrome no the right and mild carpal tunnel syndrome on the left," but also explained that nothing in the record indicated "that even this level of carpal tunnel syndrome has lasted or can be expected to last for a continuous period of at least 12 months." (Tr. 16). The ALJ found "little evidence in the record to support" Plaintiff's complaints of hand problems and limitations and therefore found no such limitations. (*Id.*).

The Court has previously referenced the additional evidence in the record of Plaintiff's reported hand limitations concerning her fibromyalgia. The Court additionally agrees with Plaintiff that the ALJ at least partially mischaracterized Plaintiff's reports to her physician that her pain level from her carpal tunnel syndrome was "moderate to severe." (Tr. 278, 280, 282, 286; *but see* Tr. 284 (describing pain as "mild to moderate" on 5/11/07). Given these discrepancies and the fact that remand is required on other grounds, Defendant should also consider whether the evidence concerning Plaintiff's carpal tunnel syndrome, either alone or in combination with her fibromyalgia and other impairments, impacts her RFC.

### III. Conclusion and Recommendation

A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary. *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted). In a sentence four remand, the Court makes a final judgment on the Commissioner's decision and "may order the Secretary to consider additional evidence on remand to remedy a defect in the original proceedings, a defect which caused the Secretary's misapplication of the regulations in the first place." *Faucher,* 17 F.3d at 175.

For the reasons explained herein, **IT IS RECOMMENDED THAT**:

1. The decision of the Commissioner to deny Plaintiff DIB benefits be **REVERSED** and this matter be **REMANDED** under sentence four of 42 U.S.C. §405(g);

2. On remand, the ALJ be instructed to carefully review evidence of Plaintiff's allegations of additional limitations based on evidence of fibromyalgia, degenerative disc disease, and/or carpal tunnel syndrome;

3. As no further matters remain pending for the Court's review, this case be **CLOSED.**

                                         /s Stephanie K. Bowman
                                         Stephanie K. Bowman
                                         United States Magistrate Judge

**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

PATRICIA BLACKBURN,                              Case No. 1:09-cv-943

    Plaintiff,                                       Barrett, J.
                                                 Bowman, M.J.
  v.

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).